UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERSON PAOLO SOSA FLORES,[1]<br>Petitioner,<br>v.<br>WARDEN OF ADELANTO ICE PROCESSING CENTER, et al.,<br>Respondents. | Case No. 5:26-cv-05734-KES<br><br>ORDER GRANTING THE PETITION AND ORDERING PETITIONER'S RELEASE FROM CUSTODY |

## I. INTRODUCTION

Gerson Paolo Sosa Flores ("Petitioner") filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" at Dkt. 1), challenging Petitioner's detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). Respondents answered the Petition ("Answer" at Dkt. 9), and Petitioner replied ("Reply" at Dkt. 15). The parties have consented to

[1] Petitioner's Reply states that his "middle name is incorrectly spelled 'Paulo' in the docketed caption rather than 'Paolo.'" (Reply at 9, n.1.) The Clerk is directed to correct this misspelling.

the jurisdiction of the Magistrate Judge. (Dkt. 17.)

The Petition is granted and Respondents are directed to immediately release Petitioner from custody. He has demonstrated that the termination of his parole and his re-detention without a pre-deprivation hearing violated his right to due process.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. Entry and Life in the U.S.

Petitioner is a citizen of Peru. (Answer Ex. A / Dkt. 9-1 at 2 (DHS Form I-213).) He entered the U.S. in December 2022 with his minor daughter. (Pet. at 6, ¶ 13; Answer Ex. A / Dkt. 9-1 at 3 (DHS Form I-213).) Petitioner states they were detained by U.S. Customs and Border Protection for one day and then released under parole. (Pet. at 6, ¶ 13; see also Answer Ex. A / Dkt. 9-1 at 4 (DHS Form I-213, stating that Petitioner was released "due to detention capacity with Form I-94 as an alternate to detention as a condition of parole"); see generally U.S. Customs and Border Protection, https://i94.cbp.dhs.gov/home (describing an I-94 as "proof of legal visitor status") (last accessed Nov. 9, 2026).

He lived in the U.S. for the next four years. (Pet. at 6, ¶ 13.) In December 2023, Petitioner filed an application for asylum and withholding of removal with U.S. Citizenship and Immigration Services ("USCIS"). (Answer Ex. A / Dkt. 9-1 at 4.) He has been granted work authorization, which is valid through 2029. (Pet. at 7, ¶ 15; see also Answer Ex. A / Dkt. 9-1 at 4 ("On September 6, 2024, the USCIS approved [Petitioner's] Application for Work Authorization, Form I-765.").) He has no criminal history. (Id. ("Records checks do not indicate any prior criminal history.").)

### B. Detention by ICE (Sept. 8, 2026).

In September 8, 2026, Petitioner reported in person to an ICE office in Los

Angeles and was taken into ICE custody.[2] (Answer Ex. A / Dkt. 9-1 at 4 (DHS Form I-213).) An administrative arrest warrant was issued for his arrest and served on him the same day. (Answer Ex. B / Dkt. 9-2 (the warrant).) He was served with a notice to appear ("NTA") charging him with removability under § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). (Answer Ex. C / Dkt. 9-3 (the NTA).)

On September 30, 2026, an Immigration Judge ("IJ") found that Petitioner was detained and subject to removal pursuant to 8 U.S.C. § 1225(b), such that he was subject to mandatory detention and the IJ lacked jurisdiction to conduct a bond hearing. (Answer Ex. E / Dkt. 9-5 (IJ's written decision).) The IJ then wrote that *if* the immigration court had jurisdiction (which the IJ had already concluded it did not), then the IJ would authorize Petitioner's release pursuant to a "high but reasonable" $25,000 bond.[3] (Id. at 4-5.)

Petitioner's removal case remains pending with a master hearing currently scheduled for December 17, 2026. See Executive Office for Immigration Review ("EOIR"), Automated Case Information, https://acis.eoir.justice.gov/en/ (A# 246-

---

[2] Petitioner's daughter (apparently an adult by 2026) was also detained at this appointment, but she filed a successful, unopposed habeas action and was released in early November 2026. See Sheyla Alessandra Sosa Huanca v. Warden of Adelanto ICE Processing Center et al., C.D. Cal. case no. 5:26-cv-05921-DSR. The arguments in Respondents' Answer challenging Petitioner's standing to assert claims on behalf of his daughter (Answer at 9-10) are moot.

[3] The IJ does not explain this "high" number given the acknowledgment that Petitioner earned "minimal" income, had complied with check-in requirements, and has strong ties to the local community through his daughter, his sponsor, and his stable employment. The IJ did not cite any evidence to support a finding of flight risk, let alone flight risk so high as to justify a $25,000 bond, other than his "recent and unlawful entry" into the U.S. (Answer Ex. E / Dkt. 9-5 at 5.) This order is not reviewing the IJ's "alternative" bond determination for abuse of discretion, however, because that determination, made after the IJ found that she lacked jurisdiction to set bond, has no legal import.

264-536 (Peru), last accessed Nov. 16, 2026). He remains in ICE custody in Adelanto, California. See ICE Detainee Locator, https://locator.ice.gov/odls/ A# 246-264-536 (Peru), last accessed Nov. 16, 2026). He has now been in detention for more than two months.

**C. Habeas Proceedings.**

The Court received Petitioner's pro se Petition on September 28, 2026. (Dkt. 1.) The Petition raises the following claims:

Ground 1: Petitioner's re-detention without notice or a pre-deprivation hearing violated procedural due process. (Id. at 2, 6.)

Ground 2: Petitioner's re-detention without notice or a pre-deprivation hearing violated substantive due process. (Id.)

Ground 3: Respondents violated the Fifth Amendment, Administrative Procedure Act ("APA"), and the Accardi doctrine[4] by revoking his parole without giving him written notice of the reason(s) for doing so and despite his compliance with the conditions of his release. (Id.)

Ground 4: Respondents violated the Fourth Amendment by scheduling a sham interview for Petitioner and his daughter, an interview that Petitioner contends was a set up to arrest them illegally without cause. (Id. at 7.)

Petitioner seeks immediate release and an order enjoining Respondents from re-detaining him without a pre-detention hearing before an IJ, held after at least seven days' notice. (Id.)

Respondents answered the Petition on October 19, 2026. (Dkt. 9.) They argue that his parole was lawfully terminated because they were not required to demonstrate any changed circumstances before terminating his parole. Rather, since Petitioner "has no legal status to remain in the United States," they have discretion to detain him at any time and hold him without a bond hearing. (Id. at 2-

[4] See United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954).

3.)

Respondents contend they gave Petitioner legally adequate notice of the reason(s) for revoking his parole by serving him with "a Form I-200 Arrest Warrant as well as Form I-862, Notice to Appear," which "confirmed that Petitioner lacked immigration status to remain in the United States" and "constitute[d] written notice of termination of Petitioner's parole under 8 C.F.R. § 212.5(e)(2)(i)." (Id. at 3.) But they also argue that even if his arrest was unlawful, he would not be entitled to release – only a bond hearing. (Id. at 8.)

Regarding procedural due process, they contend that Petitioner "received a bond hearing … on September 30, 2026," so the Court should not consider his habeas claims until he completes an appeal to the Bureau of Immigration Appeals ("BIA"). (Id. at 2) Respondents' assertion that Petitioner received a bond hearing is untrue, because a proceeding at which an IJ concludes that she lacks jurisdiction to consider bond does not qualify as a bond hearing. Respondents contend it is legally significant that the IJ "still held a complete history and analyzed whether Petitioner was a flight risk or a danger to the community" after ruling that the IJ had no jurisdiction to conduct such a proceeding. (Id. at 4.)

Finally, Respondents contend that Petitioner's due process rights will be adequately protected if he gets his first real bond hearing after spending six months in custody, pursuant to the injunction entered in Rodriguez. (Id. at 6.)[5]

On October 23, 2026, the Court appointed counsel for Petitioner under 18

---

[5] "Named after the Ninth Circuit's decision in Rodriguez v. Robbins, 804 F.3d 1060 (9th Cir. 2015), which has an extensive history that need not be recounted here, a Rodriguez bond hearing is a periodic custody redetermination proceeding … where the government must show at six-month intervals that a detainee's continued detention pending removal proceedings is justified by clear and convincing evidence of flight risk or danger to the community." Penaloza Monsalve v. Semaia, No. 26-cv-00463-SVW-ACCV, 2026 WL 1625352, at *1 n.1 2026 U.S. Dist. LEXIS 121961, at *2 n.1 (C.D. Cal. June 1, 2026).

U.S.C. § 3006A(a)(2)(B). (Dkt. 11.) Petitioner filed a counseled Reply on November 2, 2026. (Dkt. 15.)

## III. DISCUSSION

### A. Exhaustion of Administrative Remedies is Waived.

#### 1. Legal Standard.

For habeas petitions properly filed under 28 U.S.C. § 2241, like the present Petition, the exhaustion requirement is prudential, rather than jurisdictional. Where a noncitizen denied bond under § 1226(a) does not exhaust his administrative remedies by appealing to the BIA, "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." Leonardo v. Crawford, 646 F.3d 1157, 1160 (9th Cir. 2011).

Courts deciding whether to excuse prudential exhaustion generally consider what are known as the Puga factors, which consider whether:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017) (quoting Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007)).

"Nonetheless, even if the three Puga factors weigh in favor of prudential exhaustion, a court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" Hernandez, 872 F.3d at 988 (quoting Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004)).

**2. Analysis.**

Exhaustion in this case would be futile. The IJ did not reach the issue of whether Petitioner was entitled to bond hearing *before* he was arrested by ICE, which is the only claim being adjudicated by this Court. The immigration court likely lacks jurisdiction to adjudicate such a claim, which arises from the Constitution rather than any federal statute or regulation. The immigration court also has no special expertise in deciding such claims that is superior to this Court's.

Furthermore, Petitioner would suffer irreparable harm if forced to wait for the BIA to render a decision on his appeal, which is likely to take at least six months. See Gonzalez Reyes v. Rios, No. 26-cv-3830-JGB-DFM, 2026 WL 2190830, at *2, 2026 U.S. Dist. LEXIS 168799, at *7 (C.D. Cal. July 28, 2026) ("'In 2024, the EOIR data showed an average processing time of 204 days for bond appeals.' Rodriguez v. Bostock, 802 F. Supp. 3d 1297, 1307 (W.D. Wash. 2025). And that number has likely only increased since 2024 given the BIA's increased workload and its inability to 'keep up with incoming filings while tackling the backlog in any meaningful way.' Appellate Procedures for the Board of Immigration Appeals, 91 Fed. Reg. 5267, 5270 (Feb. 6, 2026)."); see also Hernandez, 872 F.3d at 995 (describing "the irreparable harms imposed on anyone subject to immigration detention (or other forms of imprisonment)").

Accordingly, the administrative exhaustion requirement is waived.

**B. Petitioner is Entitled to Relief on Ground 1 Because Respondents Violated His Due Process Rights By Re-Detaining Him Without a Pre-Deprivation Hearing.**

**1. General Due Process Standard**

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence

here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). "[T]he Due Process Clause of the Constitution may require greater procedural protections than a statutory or regulatory scheme provides when freedom from imprisonment is at stake." Perez Bueno v. Janecka, No. 25-cv-03376-CAS-BFM, 2026 WL 309934, at *3, 2026 U.S. Dist. LEXIS 24644, at *7 (C.D. Cal. Feb. 5, 2026). To determine what procedural protections an individual is owed in the event of a government deprivation of a protected liberty interest, courts balance three factors: (a) the private interest that will be affected by the official action; (b) the risk of an erroneous deprivation of such interest and the value of additional procedural safeguards; and (c) the countervailing government interest. Mathews, 424 U.S. at 335.

**2. Analysis.**

a. Private interest affected.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). Many district courts in this circuit have held that noncitizens previously released from custody have a protected liberty interest in remaining out of custody, because "the government's decision to release [them] creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Ramos-Maldonado v. Semaia, No. 26-cv-01202-SSS-AS,

2026 WL 790788, at *2, 2026 U.S. Dist. LEXIS 57088, at *6-7 (C.D. Cal. Mar. 18, 2026); see also Domingo v. Kaiser, No. 25-cv-05893, 2025 WL 1940179, at *2, 2025 U.S. Dist. LEXIS 133824 at *5-6 (N.D. Cal. July 14, 2025) (collecting cases); Omer G. G. v. Kaiser, 815 F. Supp. 3d 1098, 1106-13 (E.D. Cal. 2025).

Like the noncitizens in those cases, Petitioner was previously released from ICE custody in December 2022 and lived at liberty in the U.S. for about four years. During that time, he received legal authorization to work and supported his daughter. In the Answer, Respondents state that "Border Patrol released Petitioner *only* due to detention capacity with a Form I-94 admission record as an alternative to detention as a condition of parole." (Answer at 3.) To the extent Respondents suggest that this kind of release did not constitute an "implicit promise" that Petitioner would remain at liberty so long as he complied with the conditions of his parole, they have cited no legal or factual support for that position.

In sum, Petitioner had a liberty interest, protected by the Fifth Amendment's Due Process Clause, in remaining out of ICE custody. Thus, the first Mathews factor favors Petitioner.

b. Risk of erroneous deprivation and value of additional procedural safeguards.

"[T]he risk of erroneous deprivation of liberty is high absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker to determine whether Petitioner's detention bears a reasonable relation to the authorized statutory purposes of civil immigration detention: to ensure appearance at future immigration proceedings or to prevent danger to the community." Perez Bueno, 2026 WL 309934, at *4, 2026 U.S. Dist. LEXIS 24644, at *9 (citing Zadvydas, 533 U.S. at 693-94).

The facts of this case demonstrate the value of such additional safeguards. There is no evidence that Petitioner was ever served with notice of why his prior release was being revoked – other than notice that he "lacked legal status to

remain" in the U.S. It is unclear whether this is true, given that he had received parole and work authorization. But whatever the case, his status was definitely not a new development or changed circumstance. Neither of the two forms Respondents cite—the administrative arrest warrant and NTA—disclose any such change in circumstances. (Answer Ex. B / Dkt. 9-2 (the warrant); Answer Ex. C / Dkt. 9-3 (the NTA).) If Respondents believed that something had changed that suddenly made Petitioner dangerous or a flight risk, then those new circumstances could have been disclosed to him and addressed at a pre-deprivation hearing. Instead, Respondents arrested Petitioner and continue to hold him under § 1225(b)(1)(A) without a substantive bond hearing.

A pre-deprivation hearing requires the government to produce its evidence of changed circumstances, danger to the community, and flight risk, and it gives Petitioner an opportunity to challenge that evidence. Requiring the government to do so *before* Petitioner's arrest gives him a meaningful opportunity to retain counsel and collect evidence. This is a significant procedural safeguard. Accordingly, the second Mathews factor favors Petitioner.

c. Countervailing government interest.

As many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously released noncitizens like Petitioner without a pre-detention hearing. Ramos-Maldonado, 2026 WL 790788, at *4, 2026 U.S. Dist. LEXIS 57088, at *11 (collecting cases); Gudavasov v. Marin, No. No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *2, 2026 U.S. Dist. LEXIS 49484, at *6 (C.D. Cal. Mar. 9, 2026) (same). Additionally, the burden of a pre-detention hearing is low. In immigration court, custody hearings are routine and impose minimal cost. In this Court's experience, Respondents are routinely able to comply with orders requiring that such a hearing be held within seven days. Respondents have presented no evidence to the contrary.

Accordingly, all three Mathews factors weigh in favor of providing

Petitioner with a pre-deprivation hearing prior to any detention.

d. Appropriate remedy is release, not post-deprivation hearing.

Releasing Petitioner is narrowly tailored to the specific wrong, because it restores the status quo that was in effect before Respondents violated Petitioner's due process rights. Moreover, allowing the government to "cure" such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless; the government could always wait until a habeas petition is filed and then offer to hold a hearing. Many courts have found that a post-detention bond hearing is insufficient in this context. <u>See</u> <u>Gudavasov v. Marin</u>, No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *3, 2026 U.S. Dist. LEXIS 49484, at *6 (C.D. Cal. Mar. 9, 2026) (collecting cases finding that release, rather than a post-detention bond hearing, is the appropriate remedy); <u>Sachin v. Warden</u>, No. 26-cv-00707-MWC-ADS, 2026 U.S. Dist. LEXIS 36819, at *9-11 (C.D. Cal. Feb. 21, 2026) (granting TRO ordering Petitioner's release, instead of a post-deprivation bond hearing, finding "Respondents … fail to recognize that a bond hearing constitutes post-deprivation relief, which has no bearing on whether Respondents provided the requisite pre-deprivation relief.").

In fact, courts have most frequently found that this type of due process violation warrants *both* immediate release from custody *and* an injunction preventing further violations of Petitioner's due process rights. <u>See</u>, <u>e.g.</u>, <u>Medrano-Rocha v. Santacruz</u>, 817 F. Supp. 3d 871, 882-83 (C.D. Cal. Jan. 23, 2026); <u>Nieves v. Mullin</u>, No. 5:26-cv-01471-DOC-DSR, 2026 WL 931143, at *4, 2026 U.S. Dist. LEXIS 77391, at *11 (C.D. Cal. Apr. 1, 2026); <u>Fernandez v. Semaia</u>, No. 25-cv-03412-SPG-MBK, 2026 WL 136229, at *7, 2026 U.S. Dist. LEXIS 10909, at *25 (C.D. Cal. Jan. 13, 2026). Based on the weight of this persuasive authority, the Court will enter both types of relief here.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that:

1. Ground 1 of the Petition is granted, and all the other grounds are dismissed as moot.

2. Respondents shall **immediately release** Gerson Paulo Sosa Flores (A# 246-264-536) from custody, subject to the same conditions of parole in place before his September 2026 arrest.

3. Within **three (3) days** of the date of this order, Respondents shall file a Notice of Release confirming Petitioner has been released from custody.

4. Respondents shall not re-detain Petitioner without providing Petitioner a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that (a) Petitioner is a flight risk or a danger such that Petitioner's physical custody is required, or (b) on account of changed circumstances, there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future.

DATED: November 16, 2026

Karen E. Scott

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE